HAVERHILL MANOR, INC. *vs.* COMMISSIONER OF PUBLIC
WELFARE & another.[1]

Suffolk.  January 9, 1975. — June 4, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Constitutional Law,* Due process of law, Right to a hearing.  *Regula-
tion.  State Administrative Procedure Act.  Commissioner of
Public Welfare,* Payment for health services.  *Equity Jurisdiction,*
Declaratory relief.  *Equity Pleading and Practice,* Parties, De-
claratory proceeding.

A decision by the Commissioner of Public Welfare to offset against
sums currently owed to a nursing home for statutory health
services alleged prior overpayments to the home and three
affiliated nursing homes was an administrative expedient in a
specific case, and was not a "regulation" within G. L. c. 30A,
§ 1 (5).  [21]

The Commissioner of Public Welfare may legally offset against sums
currently owed to a nursing home for statutory health services past
overpayments to it until the overpayments have been recaptured
by the Commonwealth, despite the absence of express statutory
authorization.  [21-23]

An offset procedure adopted by the Commissioner of Public Welfare,
to deduct current amounts owed to a nursing home for statutory
health services from alleged past overpayments to it, without first
holding a hearing on the question whether the overpayments had,
in fact, occurred, did not deny the home due process of law under
the Fourteenth Amendment to the United States Constitution [23-
28]; the home's interest in receipt of the current amounts was not
sufficient to overcome the Commissioner's interest in pursuing an
expeditious procedure guarding the public purse [28].

The right of an incorporated nursing home to bring a suit in equity
under G. L. c. 231A, for injunctive and declaratory relief against
the Commissioner of Public Welfare to challenge the legality of his

---

[1] The Rate Setting Commission under G. L. c. 7, §§ 30K-30P (see
n. 2, *infra*).

offsetting, without a hearing, against sums currently owed to the plaintiff for statutory health services alleged past overpayments to three individually incorporated nursing homes affiliated with the plaintiff satisfies the constitutional requirement of an opportunity for a hearing before a deprivation of property becomes final [28-30]; the affiliated nursing homes will be necessary parties to the proceeding [31].

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on August 6, 1973.

The case was reserved and reported by *Kaplan, J.*

*Richard H. Gens* for the plaintiff.

*Danielle E. deBenedictis,* Assistant Attorney General, for the defendants.

TAURO, C.J.    In this suit for declaratory relief, Haverhill Manor, Inc. (Haverhill Manor), challenges the refusal of the Commissioner of Public Welfare (commissioner) to remit to Haverhill Manor certain sums owed Haverhill Manor for the provision of health services.    Haverhill Manor asserts that the administrative procedures employed by the commissioner in reaching his determination abridged its rights under the due process clause of the Fourteenth Amendment to the United States Constitution and under the State Administrative Procedure Act (APA), G. L. c. 30A, and that the commissioner had no legal right to treat Haverhill Manor and three affiliated nursing home corporations as a single corporate entity in order to collect past overpayments to the affiliated homes from money owed to Haverhill Manor.    The case comes before us on the reservation and report, without decision, of a single justice of this court.

Briefly, the facts appearing in the parties' statement of agreed facts, which amounts to a case stated, are these. Haverhill Manor, a Massachusetts corporation licensed to do business as a nursing home, furnishes a variety of health care services to eligible persons under programs administered by the Department of Public Welfare (department) and, as a consequence, is deemed a "provider of health services" under G. L. c. 7, §§ 30K-

30P.[2] Haverhill Manor receives payments for health services provided pursuant to G. L. cc. 118, 118A, 118C, 118D[3] and 118E, in accordance with rules and regulations adopted thereunder.

Haverhill Manor and three other individually incorporated nursing homes (affiliated homes) which also supply health services under the above statutes are wholly-owned subsidiaries of Century Convalescent Centers, Inc. (Century), a Massachusetts corporation. Century, in turn, is a wholly-owned subsidiary of Carex International, Inc. (Carex), a Delaware corporation with its principal place of business in Los Angeles, California. Carex, for a management fee, performs accounting, managerial and administrative services for Haverhill Manor and the affiliated homes. All such services are performed, and original financial records are kept, in California. The funds of each of the corporations (with the exception of petty cash accounts maintained separately in Massachusetts) are commingled by Carex with its own funds and the funds of its other subsidiaries. The Massachusetts corporations and Carex file consolidated tax returns for Massachusetts and Federal tax purposes. However, Haverhill Manor and the affiliated homes have individual identification numbers with the United States Internal Revenue Service and individual vendor numbers with the department.

The rates of payment for the health services provided by Haverhill Manor and the affiliated homes pursuant to the above mentioned programs are prescribed by the Rate

---

[2] The parties refer to these sections. The sections were repealed by St. 1973, c. 1229, effective July 1, 1974, which substituted G. L. c. 6A, §§ 31-36. As G. L. c. 7, §§ 30K-30P, were in effect during the years at issue in this suit, we employ the repealed statutory provisions in the text.

[3] General Laws c. 118D was in effect during the years at issue in this suit but has been repealed by St. 1973, c. 1210, § 24, effective January 1, 1974.

Setting Commission (commission) pursuant to G. L. c. 7, § 30L. For each year, the commission determines an interim rate for each provider of health services based on data from a prior year's operations and on regulations which the commission promulgates. The department makes payments to each provider in accordance with these interim rates. The commission establishes final rates[4] for the year based on actual costs incurred in the provision of health services and verified by a full field audit.[5] The final rate determination may result in an adjustment of the amounts owed a provider for a given year or indicate that the department has overpaid the provider for the year. The efforts of the commissioner, acting for the department,[6] to recover overpayments made to Haverhill Manor and the affiliated homes by deducting the amounts of such overpayments from sums owed to Haverhill Manor for services performed in 1973 have given rise to the instant litigation.

Initially, the commission issues interim and final rates without affording the provider notice or opportunity to be heard. A provider who is "aggrieved" by any interim or final rate may appeal and will receive a full hearing before a hearing officer or a member of the commission in accordance with G. L. c. 30A.[7] G. L. c. 7, § 30O. A provider who is aggrieved by a decision of the commission after such hearing may petition for review in the Superior Court for Suffolk County. See G. L. c. 7, § 30O.

---

[4] The amended statute provides for determination of preliminary final rates as well. G. L. c. 6A, § 32.

[5] See G. L. c. 6A, § 32.

[6] Pursuant to G. L. c. 18, § 3, the department is under "the direction, supervision and control" of the commissioner.

[7] Under the new statute, G. L. c. 6A, § 36, hearings on appeal are conducted by the division of hearing officers alone.

The commission established interim rates severally applicable to Haverhill Manor and the three affiliated homes for the years 1968 through 1971. Necessary appeals have been filed, hearings held, and decisions rendered as to these interim rates.[8] Final rates, computed after a full field audit, have been issued for Haverhill Manor and the affiliated homes for the same years. Appeals are pending with respect to the 1970[9] and 1971 final rates. On the basis of these final rates for the years 1968 through 1971, the commissioner has determined that Haverhill Manor and the three affiliated homes were overpaid substantial sums in the years prior to 1973.[10] As a consequence, he has refused to authorize payments to Haverhill Manor for health services rendered in 1973 until the overpayments have been recaptured.[11] The commissioner asserts that he can offset all amounts due to the Commonwealth from Haverhill Manor against amounts owed to Haverhill Manor for 1973. He asserts further that he can offset amounts owed by the three affiliated homes to the Commonwealth against amounts owed to Haverhill Manor for 1973. The commissioner's procedure would preclude any payments to Haverhill

---

[8] None of the homes filed appeals from the 1970 interim rates.

[9] Though the affiliated homes appealed the 1970 final rate determination, Haverhill Manor did not.

[10] Payments were, of course, predicated on the relevant interim rates.

[11] At the time the instant proceeding was commenced, a sum in excess of $2,800 was owed to Haverhill Manor by the Commonwealth and the department for 1973. A preliminary order of the single justice stated that the parties appeared to agree that "the combined or net adjustment for all prior fiscal periods is a credit in favor of" Haverhill Manor and instructed the commissioner to authorize payment of this sum owed for 1973. Subsequently, the commission issued final rates for 1971. The commissioner then calculated that Haverhill Manor had received almost $30,000 in excess of the amounts to which it was entitled.

Manor until the alleged overpayments have been recovered by the Commonwealth.

In the instant proceeding, Haverhill Manor contests the commissioner's right to utilize his offset procedure. Haverhill Manor presents four specific objections: It alleges that (1) the decision to offset overpayments against current amounts due to Haverhill Manor constitutes a regulation, as that term is defined in the APA, G. L. c. 30A, § 1 (5), and was improperly promulgated and implemented without a hearing; (2) the commission's failure to provide a post-audit evidentiary hearing concerning the final rate for 1971 [12] before the commissioner commenced the offset procedure denied Haverhill Manor due process of law under the Fourteenth Amendment; (3) the commissioner's deduction of alleged overpayments to the affiliated nursing homes from amounts owed to Haverhill Manor for services rendered in 1973 violated Haverhill Manor's rights under the due process clause of the Fourteenth Amendment because no prior hearing had been convened to give Haverhill Manor an opportunity to defend the separateness of the corporate entities involved; and (4) the commissioner, generally, had no legal right to treat the affiliated homes and Haverhill Manor as a single entity for the purpose of collection of past overpayments.

---

[12] The statement of the issue in Haverhill Manor's brief *arguably* imports a somewhat broader conception of the issue than that presented in this opinion. In its brief, Haverhill Manor predicates its procedural due process claim on the fact that the "respondents" did not afford Haverhill Manor the requested hearing before "determining . . . monies owed by petitioner to respondents." In the light of the bill for declaratory relief and the substance of Haverhill Manor's arguments, we construe this statement as a request for a post-audit pre-action evidentiary hearing to consider evidence concerning final rates. Haverhill Manor has not challenged the commissioner's determinations of amounts actually paid in the past and, we believe, does not claim a right to an evidentiary hearing on the subject of these determinations.

1. Haverhill Manor contends that the decision to offset the alleged overpayments against sums owed to Haverhill Manor for services rendered in 1973 is a regulation within the meaning of the APA, G. L. c. 30A, § 1 (5), and that, consequently, the "regulation" is invalid because timely notice and a fair hearing did not precede its issuance and implementation. We disagree. The decision to offset is not a "rule, regulation, standard or other requirement of *general application* and future effect" (emphasis supplied). G. L. c. 30A, § 1 (5), inserted by St. 1954, c. 681, § 1 (see amendments by St. 1969, c. 808, § 2; St. 1970, c. 712, § 2). Rather, it appears from the record that the offset is an administrative expedient undertaken to recover overpayments made in one *specific* case. We have before us no indication that the commissioner proposes to adopt this method generally in the future or that the procedure is proposed as a rule or standard of conduct. Accordingly, the decision to offset is not a "regulation," and the provisions of the APA relative to notice and hearings are inapposite. Cf. *Department of Pub. Health* v. *Cumberland Cattle Co.* 361 Mass. 817, 828-829 (1972).

2. Despite the absence of express statutory authorization, we believe that the commissioner may legally offset current obligations against past overpayments. Under G. L. c. 18, § 5E, any vendor who receives payment under any assistance program administered by the department must return overpayments or erroneous payments to the State Treasurer on demand. The offset procedure expeditiously recaptures funds owed to the Commonwealth without necessity for demand or court proceedings. " [M]ultiplicity of suits and circuity of action are avoided." *Wisconsin Cent. R.R.* v. *United States,* 164 U. S. 190, 211 (1896). Similar procedures have repeatedly been upheld by the Federal courts. See, e.g., *Gratiot* v. *United States,* 15 Pet. 336, 370 (1841); *Wisconsin Cent. R.R.* v. *United States, supra; Grand Trunk Western Ry.* v. *United States,* 252 U. S. 112, 121

(1920); *Rains* v. *United States,* 312 F. 2d 764, 767 (Ct. Cl. 1963); *Wilson Clinic & Hosp. Inc.* v. *Blue Cross of S. C.* 494 F. 2d 50, 52 (4th Cir. 1974); *Russi* v. *Weinberger,* 373 F. Supp. 1349, 1352 (E. D. Va. 1974). Cf. *United States* v. *New York, N. H. & H. R.R.* 355 U. S. 253, 261 (1957).

Further, the financial relationship between the department and Haverhill Manor appears analogous to a relationship between other parties doing business which would create a "mutual and open account current" or a simple "running (open) account." In either case and, by extension, in this case, one party owes the other party only the balance in the account at the particular time, and charges by each may satisfy charges by the other. The balance owed by either is computed by setting off charges against favorable items. See *Penniman* v. *Rotch,* 3 Met. 216, 219 (1841); *Eldridge* v. *Smith,* 144 Mass. 35, 36 (1887); *Snell* v. *Rousseau,* 257 Mass. 559, 561-562 (1926) (open [running] account); *Howland* v. *Stowe,* 290 Mass. 142, 147 (1935); *Markiewicz* v. *Toton,* 292 Mass. 434, 437 (1935); *Boston* v. *Nielsen,* 305 Mass. 429, 431 (1940). See, generally, Corbin, Contracts, § 953 (1951) (running account); anno. 45 A. L. R. 3d 446 (mutual and open account current). In the instant case, Haverhill Manor continually provides services for which the commissioner makes payment at the interim rates. The value of the services is subject to adjustment in the final ratemaking procedure. As the parties undoubtedly realize, the adjustment may indicate that Haverhill Manor was overpaid previously. Thus, at any given time, Haverhill Manor may either be owed money for services provided or owe money as restitution for past overpayments. It would seem most consistent with the statutory scheme, the understanding of the parties, and efficient administration to offset the commissioner's overpayments against amounts owed to Haverhill Manor for new services and, by so doing, to reach a balance in the

account in favor of the commissioner until the overpayments have been recaptured.

3. As noted above, the commissioner has reduced payments to Haverhill Manor for health services supplied in 1973 by the amount of alleged overpayments to Haverhill Manor in 1971 and preceding years. Haverhill Manor contends that this offset procedure deprives it of due process of law guaranteed under the Fourteenth Amendment because the offsets preceded any hearing on the question whether overpayments had, in fact, occurred. Again, we disagree.

We do not question that Haverhill Manor has shown a property interest which is cognizable under the due process clause. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state laws — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Regents of State Colleges* v. *Roth,* 408 U. S. 564, 577 (1972). Accord, *Arnett* v. *Kennedy,* 416 U. S. 134, 151 (1974) (plurality opinion), reh. den. 417 U. S. 977 (1974). See, e.g., *Goldberg* v. *Kelly,* 397 U. S. 254 (1970). Under the law of the Commonwealth, Haverhill Manor had a valid claim of entitlement to the 1973 payments. It had provided health services in accordance with the law and was entitled to receive reimbursement under the interim rate for 1973 then in effect. Delay in receipt of the reimbursement deprived Haverhill Manor of the use of the funds during the period of delay. The use of the funds, itself, is a property interest which may not be taken by the Commonwealth without due process of law. *Sniadach* v. *Family Fin. Corp. of Bay View,* 395 U. S. 337, 342 (1969) (Harlan, J., concurring). Note, The Supreme Court, 1973 Term, 88 Harv. L. Rev. 41, 74, n. 21 (1974). See, e.g., *Fuentes* v. *Shevin,* 407 U. S. 67, 84-86 (1972), reh. den. 409 U. S. 902 (1972); *North Ga. Finishing, Inc.* v. *Di-Chem, Inc.* 419 U. S. 601, 606 (1975). Thus, though Haverhill Manor may

ultimately receive the payments for health services extended in 1973 because of a favorable outcome in hearings conducted on its appeal of the 1971 final rate, even the temporary deprivation of the payments must conform to the demands of due process. It is well settled that "a temporary, non-final deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." *Fuentes* v. *Shevin*, 407 U. S. 67, 85 (1972), reh. den. 409 U. S. 902 (1972).

To say that Haverhill Manor has a property right protected by the due process clause does not in any way determine what process constitutes "due process" in the circumstances. Due process is a protean concept which imports different procedures in different situations or circumstances. "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation . . . [C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Restaurant Wkrs. Union Local 473, AFL-CIO* v. *McElroy*, 367 U. S. 886, 895 (1961), reh. den. 368 U. S. 869 (1961). Accord, *Goldberg* v. *Kelly*, 397 U. S. 254, 263 (1970); *Mitchell* v. *W. T. Grant Co.* 416 U. S. 600, 610 (1974); *Fusari* v. *Steinberg*, 419 U. S. 379, 389 (1975). Ordinarily, a hearing should precede deprivation of liberty and property by the State. *Fuentes* v. *Shevin*, 407 U. S. 67, 88 (1972), reh. den. 409 U. S. 902 (1972). See *Morrissey* v. *Brewer*, 408 U. S. 471, 484 (1972). However, "there are recurring situations in which prior notice and hearing cannot be insisted upon. . . . In such cases, the necessary notice and rudimentary hearing should follow as soon as practicable." *Goss* v. *Lopez*, 419 U. S. 565, 582-583 (1975), quoted in *O'Hara* v. *Commissioner of Pub. Safety*, 367 Mass. 376, 384 (1975). Postponement of notice and hearing has been held consistent with due

process in cases where summary administrative action, prior to hearing, was necessary to protect the public from contaminated food (*North American Cold Storage Co.* v. *Chicago,* 211 U. S. 306 [1908]), from misbranded drugs (*Ewing* v. *Mytinger & Casselberry, Inc.* 339 U. S. 594 [1950]), from rapidly rising rents in wartime (*Bowles* v. *Willingham,* 321 U. S. 503 [1944]), and from bank failures (*Coffin Bros. & Co.* v. *Bennett,* 277 U. S. 29 [1928], *Fahey* v. *Mallonee,* 332 U. S. 245 [1947]). Courts have repeatedly held that, to sustain the orderly functioning of government and safeguard the integrity of the public purse, tax officials may assess and collect taxes before vouchsafing the taxpayer a right to hearing and judicial review as to the legality of the assessment. See *Old Colony R.R.* v. *Assessors of Boston,* 309 Mass. 439 (1941); *Lincoln Hotel Co.* v. *Assessors of Boston,* 317 Mass. 505 (1945); *Canron, Inc.* v. *Assessors of Everett,* 366 Mass. 634, 638 (1975); *Phillips* v. *Commissioner of Int. Rev.* 283 U. S. 589 (1931). In a recent case, the United States Supreme Court upheld seizure of a yacht before notice and hearing because, inter alia, such seizure precluded removal of the yacht from the jurisdiction and consequent frustration of the interests served by the statute authorizing seizure. *Calero-Toledo* v. *Pearson Yacht Leasing Co.* 416 U. S. 663, 679 (1974), reh. den. 417 U. S. 977 (1974).

Given the aforementioned legal background, we do not believe the offset procedure adopted by the commissioner with respect to the pre-1973 overpayments to Haverhill Manor violated Haverhill Manor's right to due process of law. Summary action serves the same substantial governmental purpose served in the cited tax cases — preservation of the integrity of the public purse. Payments to Haverhill Manor, if they were made in spite of the preliminary findings of the field audit, would deplete the public treasury to the extent of the payments in the face of a real possibility that no money was owed to Haverhill Manor. We will not, in this case, require the com-

missioner to disburse funds prior to a definitive finding of entitlement. It is neither economical nor prudent to have the Commonwealth expend funds with the knowledge that legal action may be required to recover the money in the future. This is particularly true when, as here, the pyramidal ownership structure of the corporate family to which Haverhill Manor belongs and the location of the commingled corporate bank accounts suggest that such legal action might take place in the courts of another State.

We cannot say that Haverhill Manor's interest in pre-hearing receipt of the funds is sufficient to overcome the commissioner's interest in pursuing this expeditious procedure. Haverhill Manor has presented no evidence of potential harm [13] beyond the bare, allegedly temporary deprivation of the use of property. In a reply brief, Haverhill Manor has asserted that reductions of current payments will engender reductions of patient services and, perhaps, closing of the nursing home. Without supporting evidence of impending insolvency, this assertion is little more than a veiled threat that patients will suffer if the Commonwealth does not capitulate. [14] From the record we cannot say that, if Haverhill Manor's claim

---

[13] Haverhill Manor has not shown that the commissioner will deny Haverhill Manor interest on withheld funds if Haverhill Manor and the affiliated homes are ultimately successful in their appeals of the final rate determinations.

[14] A similar claim was advanced in a recent Federal case, in which pre-hearing suspension of Medicare payments to a provider of health services because of alleged past overpayments was challenged. The court responded: ". . . [T]he plaintiffs in this case continue to be credited for services rendered and such credit will remain irrespective of the outcome of this dispute. The only question is whether amounts credited to plaintiffs will ultimately be offset against amounts allegedly owing by them. If not, payments owing to plaintiffs will be made. Thus, there is no reason to believe that discontinuance of Medicare services by these plaintiffs is inevitable. This, coupled with the availability of Medicare services from other sources, renders the possible adverse effect on recipients insufficient and

for adjustment of the rate for 1971 has merit, Haverhill Manor will have difficulty finding funds to maintain its solvency and operations.[15]   If Haverhill Manor's claim has no merit, Haverhill Manor is not entitled to further payments and should carry on with the financing of the overpayments.

Haverhill Manor argues that *Goldberg* v. *Kelly,* 397 U. S. 254 (1970), requires a holding that it is entitled to a pre-offset hearing.   However, *Goldberg* does not have the expansive effect urged.   The outcome in *Goldberg* turned on the fundamentality of welfare payments to recipients and the necessity for continued payments if minimal subsistence was to continue.   In view of potential hardship to eligible people whose welfare payments might have been suspended, the governmental interest in not disbursing funds to the ineligible could not justify refusal to grant a pre-termination evidentiary hearing.   Mr. Justice Brennan explained the court's holding:   "It is true, of course, that some governmental benefits may be administratively terminated without affording the recipient a pre-termination evidentiary hearing.   But we agree with the District Court that when welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process. . . . For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care. . . . Thus the crucial factor in this context — a factor not present in the case of the blacklisted government contractor, the discharged government employee, the taxpayer denied a tax exemption, or virtually anyone else whose government entitlements are ended — is that termination of aid pending resolution

---

inappropriate for this Court to upset the administratively constructed grievance procedure by requiring a pre-action hearing." *Russi* v. *Weinberger,* 373 F. Supp. 1349, 1353 (E. D. Va. 1974).

[15] See n. 13, *supra.*

of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits." *Id.* at 263-264.

Haverhill Manor's need is in no way comparable to the "brutal need" (see *Russi* v. *Weinberger*, 373 F. Supp. 1349, 1352 [E. D. Va. 1974]) of the welfare recipients. It opposes its bare claim to tangible property, similar to that of the "blacklisted government contractor" or "taxpayer denied a tax exemption" (*Goldberg* v. *Kelly*, *supra*), to the legitimate need of the government for expeditious offset. "Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate." *Phillips* v. *Commissioner of Int. Rev.* 283 U. S. 589, 596-597 (1931). *Mitchell* v. *W. T. Grant Co.* 416 U. S. 600, 611 (1974). See *Marshal House, Inc.* v. *Rent Control Bd. of Brookline*, 358 Mass. 686, 706-707, n. 12 (1971). The statute accords Haverhill Manor the full panoply of due process rights to review of the 1971 final rate. See G. L. c. 7, § 30O.[16] Cf. *Coral Gables Convalescent Home, Inc.* v. *Richardson*, 340 F. Supp. 646, 650 (S. D. Fla. 1972). If Haverhill Manor's claim to higher final rates is vindicated in the hearings or on subsequent judicial review, and if the commissioner has no other items to offset against payments due for 1973, Haverhill Manor will be entitled to immediate payment of the amounts due for 1973.

4. Finally, Haverhill Manor argues, without further citation of authority, that the decision to offset alleged overpayments to the affiliated nursing homes against payments owed Haverhill Manor for health services rendered in 1973 denied Haverhill Manor due process of law under the Fourteenth Amendment. Haverhill Manor contends that it was entitled to a hearing before the

---

[16] These rights to review are continued in G. L. c. 6A, § 36.

commissioner proceeded to treat the group as one corporation.[17]   Again, we disagree.

Haverhill Manor's argument here suffers from the same infirmities as the previously discussed due process argument.   Haverhill Manor raises a simple claim of property deprivation which cannot stand before the Commonwealth's clear interest in recovering overpayments expeditiously.   As we have noted above, in such circumstances, the Commonwealth may postpone the hearing on the merits and need not afford Haverhill Manor a pre-offset hearing.   Haverhill Manor has access to forums in which it will receive a constitutionally adequate hearing after, or concurrently with, implementation of the commissioner's decision to offset alleged overpayments to the affiliated nursing homes against payments owed to Haverhill Manor.

It is true that Haverhill Manor cannot challenge the commissioner's decision through the procedures provided in G. L. c. 7, § 30O,[18] or the APA.   The statutory procedure for immediate administrative appeal and subsequent judicial review pursuant to G. L. c. 7, § 30O, is available *only* for challenges to actions of the commission.   The APA provisions applicable to "adjudicatory proceedings" (G. L. c. 30A, §§ 10, 14) are similarly inapposite, since in the instant circumstances a hearing is not "required by constitutional right[19] or by any provision of the General Laws" (G. L. c. 30A, § 1 [1]).   See *School*

---

[17] Cf. *Lexington Nursing Home, Inc.* v. *Rate Setting Commn.* 358 Mass. 601, 602-603 (1971).

[18] Since the repeal of G. L. c. 7, § 30O, these procedures have been set forth in G. L. c. 6A, § 36.

[19] Because we find the declaratory judgment procedure constitutionally adequate, we perceive no constitutional right to an adjudicatory proceeding under the APA.   Cases such as *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491, 498-499 (1965), and *Marmer* v. *Board of Registration of Chiropractors*, 358 Mass. 13, 16-17 (1970), are distinguishable on their facts.

*Comm. of Boston* v. *Board of Educ.* 352 Mass. 693, 701 (1967), app. dism. for want of a substantial Federal question, 389 U. S. 572 (1968). As we held previously (p. 21) the offset decision is not a regulation subject to hearing and appeal under G. L. c. 30A, §§ 3, 7.

Nevertheless, Haverhill Manor does have a statutorily granted right to an adequate hearing regarding the merits of the commissioner's offset determination. Haverhill Manor could have brought a bill for injunctive and declaratory relief pursuant to G. L. c. 231A. "It is settled that a suit for declaratory relief will lie to challenge the legality of an administrative action even though such action is neither an 'adjudication' nor the promulgation of a 'rule,' provided that the other requirements of maintaining such a suit can be met." *Westland Housing Corp.* v. *Commissioner of Ins.* 352 Mass. 374, 383 (1967). Accord, *South Shore Natl. Bank* v. *Board of Bank Incorporation,* 351 Mass. 363, 366 (1966). The offset decision of the commissioner raises a definite question and creates an "actual controversy" (G. L. c. 231A, § 1) cognizable under G. L. c. 231A. See *Franklin Fair Assn. Inc.* v. *Secretary of the Commonwealth,* 347 Mass. 110, 113 (1964). In a declaratory judgment proceeding, Haverhill Manor would receive a plenary judicial hearing of the factual and legal bases for its grievance.[20] The availability of this hearing satisfies the constitutional requirement that some opportunity for a hearing must be afforded before the deprivation of property becomes final. See *Associated Indus. of Mass.* v. *Commissioner of Ins.* 356 Mass. 279, 285 (1969); *Phillips* v. *Commissioner of Int. Rev.* 283 U. S. 589, 595 (1931); *Ewing* v. *Mytinger & Casselberry, Inc.* 339 U. S. 594 (1950); *Mitchell* v. *W. T. Grant Co.* 416 U. S. 600, 612 (1974).

---

[20] Haverhill Manor may also be able to challenge the commissioner's determination in a contract action.

5. Although, as we have held here, Haverhill Manor may bring a suit for declaratory relief to challenge the commissioner's treatment of the affiliated homes and Haverhill Manor as a single corporation, we do not reach the *merits* of this challenge in this suit as it is currently before us. We believe that the affiliated nursing homes are necessary parties to a declaratory proceeding on the merits. General Laws c. 231A, § 8, inserted by St. 1945, c. 582, § 1, provides that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration." It is plain that the affiliated homes have an interest which would be affected by a declaration on the merits. In a practical sense, the declaration would determine the method by which the commissioner could recapture past overpayments and, for the future, would define the financial relationships among the commissioner, Haverhill Manor and the affiliated homes without opportunity for the affiliated homes to participate. Moreover, justice requires that the affiliated homes be bound[21] by the declaration on the merits so that they are not left free to raise and litigate the same issues with Haverhill Manor and the commissioner in a different action at a later date.[22] See *Sadler* v. *Industrial Trust Co.* 327 Mass. 10, 13 (1951).

6. Haverhill Manor is not now entitled to the precise relief sought in its petition. However, as in every case where the proceeding is properly brought under G. L. c. 231A, it is entitled to a decree declaring the rights of the litigants. *Vasilakis* v. *Haverhill*, 339 Mass. 97, 101 (1959). *Hannan* v. *Enterprise Publishing Co.* 341 Mass.

---

[21] Of course, a finding that the affiliated homes and Haverhill Manor may be treated as one corporation would not bind the affiliated homes if they were not joined as parties. See *Leventhal* v. *Krinsky*, 325 Mass. 336, 340 (1950).

[22] Such an action might yield an inconsistent judgment on the merits.

363, 365 (1960). See *Gibbs Realty & Inv. Corp.* v. *Carvel Stores Realty Corp.* 351 Mass. 684, 686 (1967). Further, in the circumstances, we deem it appropriate to afford Haverhill Manor an opportunity to litigate the merits of its challenge to the treatment of the affiliated homes and Haverhill Manor as a single corporation without pleading afresh.

The case is remanded to the county court. The single justice is to enter an interlocutory decree declaring that the challenged offset procedures initiated by the commissioner were not violative of the due process clause of the Fourteenth Amendment or the State Administrative Procedure Act, G. L. c. 30A. The single justice shall retain jurisdiction of the case. Haverhill Manor is given leave within thirty days of rescript to take the necessary procedural steps to join the affiliated homes as parties. If, within that time, Haverhill Manor joins the affiliated homes as parties in the suit for declaratory relief, the single justice may (a) conduct proceedings regarding the legality of the commissioner's treatment of the affiliated homes and Haverhill Manor as a single corporation and thereafter enter such judgment as is appropriate, or (b) in his discretion, transfer the case to the Superior Court for such proceedings. If Haverhill Manor does not join the affiliated homes within the allotted time or does not seek declaratory relief on this issue, the single justice shall enter a judgment not inconsistent with this opinion.

*So ordered.*