**In re Roland Gerard FREDETTE, Inez Catherine Arsenault Fredette, Debtors.**

**The COMMONWEALTH OF MASSACHUSETTS by its DEPARTMENT OF PUBLIC WELFARE, Plaintiff,**

v.

**QUABOAG LODGE NURSING HOME, INC., Roland Gerard Fredette, Inez Catherine Arsenault Fredette, and Steven Kressler, Esq., Trustee in Bankruptcy, Defendants.**

Bankruptcy No. 4–80–00188–G.
Adv. Nos. 4–80–0079, 4–82–0015.

United States Bankruptcy Court,
D. Massachusetts.

Oct. 4, 1984.

John L. Whitlock, Boston, Mass., for Debtors.

Steven Kressler, Worcester, Mass., for Chapter 7 trustee.

Jeffrey Ogilvie, Boston, Mass., for the Com.

## MEMORANDUM AND ORDER ON DEBTOR'S MOTION FOR SUMMARY JUDGMENT

PAUL W. GLENNON, Bankruptcy Judge.

Before the Court is the motion for summary judgment of the debtors, Roland G. and Inez C. Fredette and Quaboag Lodge Nursing Home, Inc. ("debtors" or "defendants"), filed in connection with the above-captioned complaint on the grounds that the claims of the Commonwealth of Massachusetts, by its Department of Public Welfare ("Commonwealth" or "plaintiff"), are barred by the running of the statute of limitations of M.G.L. ch. 260, § 2. The complaint brought by the Commonwealth seeks to have the debt owed by the debtors declared nondischargeable under 11 U.S.C. § 523(a)(4) or in the alternative, seeks to have the debtors denied their discharge pursuant to 11 U.S.C. § 727(a)(5).[1] The Commonwealth filed an opposition to the motion on the grounds that M.G.L. ch. 260, § 2 is not applicable, and, even if it were, it would not bar its claims because the cause of action accrued less than six years prior to the commencement of the action. The parties have submitted thorough briefs. No affidavits were filed.[2] The material facts are not disputed. I find and rule as follows:

### FACTS

The debtors filed their Chapter 7 petition on March 31, 1980. Prior thereto, the debt-ors were the owners of the Quaboag Lodge Nursing Home, Inc.[3] Under M.G.L. ch. 118E, § 18, providers of nursing care who enter into an agreement with the Commonwealth are eligible to participate in the Massachusetts Medical Assistance Program ("Medicaid") and be reimbursed for moneys expended in caring for eligible recipients pursuant to per diem rates set by the Massachusetts Rate Setting Commission ("Commission") under M.G.L. ch. 6A, §§ 31–36 and regulations promulgated thereunder. Massachusetts has adopted a retrospective payment system. The applicable rate is first set by the Commission based on projected costs for the coming year, which in turn is based on the prior year's operational costs, and is an interim rate. A final rate is to be set sometime after the close of each year based on actual costs incurred by the provider, as determined by the Commission, after a full-field or desk audit. Depending upon the results of each audit, money is either owed to or from providers. Audits are conducted for each year a provider seeks reimbursement.

From 1968 through 1972, the Commission established interim rates for the debtors' nursing homes and reimbursed the homes in accordance with these rates. However, final rates were not set until May 2, 1972 for 1968; March 29, 1972 for 1969; April 19, 1973 for 1970; January 9, 1974 for 1971 and April 28, 1975 for 1972.[4] As a result of the final rates, the Commonwealth asserts it has overpaid the debtors a total of $30,019.73 and by way of the above-captioned complaint seeks to have

---

1. Originally, the United States of America, Patricia R. Harris, as she was Secretary of the United States Department of Public Health, Education and Welfare ("U.S.") was a defendant. However, on motion of the U.S., and by subsequent order of the Court, the count against the U.S. was dismissed, the court finding a lack of jurisdiction and further finding abstention proper under 28 U.S.C. § 1471(d).

2. An *unsigned* stipulation of the parties was, however, filed. The provider agreements were not supplied to the Court.

3. The debtors were also the owners of Quaboag Nursing Home, Inc. This latter home is not, however, a defendant, although by amended complaint, the plaintiff seeks to have the Court's determinations with respect to Quaboag Lodge Nursing Home, Inc. apply to the Commonwealth's claim against Quaboag Nursing Home, Inc.

4. For the year 1972, the Commonwealth agrees with the debtors that it owes money to the debtors as a result of underpayments. For the

this amount be fixed and declared nondis-chargeable.[5]

## PARTIES' ARGUMENTS

The debtors claim the Commonwealth's action is barred by the statute of limitations found in M.G.L. ch. 260, § 2 which provides that actions founded in contract must be commenced within six years.[6] The debtors allege that because the claims arose more than six years prior to the filing of the action (payments for the years 1968 through 1972 are at issue)[7] and because the contractual relationship between the Commonwealth and the debtors terminated more than six years ago (the parties agree that the corporations were liquidated in 1972)[8] M.G.L. ch. 260, § 2 bars the claims of the Commonwealth. Further, the debtors state that the parties did not maintain a "mutual and open account current" within the meaning of M.G.L. ch. 260, § 6 which would toll the running of the statute of limitations until the "time of the last item proved in the account". The debtors argue that to find a mutual account "each party [must] have reciprocal items of debit and credit against the other, and . . . they [must] intend and agree that these opposing items be set-off in a final statement of account." The debtors claim that because refunds due the Commonwealth are to be made immediately upon notification[9] there can be no "mutual and open account", the only right to set-off is that belonging to the Commonwealth. Since the last payment made by the Commonwealth to the debtors was more than six years ago, even if the plaintiffs cause of action accrued "at the time of the last item proved in the account", the action is barred. Finally, the debtors argue that unlike the federal Medicare statute, 42 U.S.C. § 1395, et seq., the Massachusetts statute has no provision which tolls the statute of limitations when facts material to a cause of action were not and could not reasonably have been known by the proper official. See 28 U.S.C. §§ 2415(a) and 2416(c). Since the Commonwealth did in fact set final rates for the years at issue within six years, there would be no reason here to adopt an exception similar to that found in the federal statute. Strict enforcement of the six-year statute of limitations would encourage the Commonwealth to act in an expeditious manner in establishing final rates.

The Commonwealth argues that the six year statute of limitations of M.G.L. ch. 260, § 2 is not applicable because the cause of action is not one founded in contract but rather is statutory;[10] "Liability under M.G.L. ch. 18, § 5E derives not from the agreement of the provider, but from the statute itself." Therefore, the Commonwealth argues, there is no applicable statute of limitations; M.G.L. ch. 118E, § 18(4) cited by the debtors only provides preconditions for participation, it does not establish contractual liability. And, since the homes are no longer operating, the past owners have become personally liable. Additional-

---

beginning years, the parties agree the debtors were overpaid pursuant to the interim rates.

5. A complaint for overpayment was originally filed on June 27, 1979 in state court. The present complaint was filed herein on June 23, 1980.

6. M.G.L. ch. 260 § 2 provides, in relevant part: "Actions of contract, . . . express or implied, . . . shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues."

7. See supra notes 4 and 5 and accompanying text.

8. Quaboag Lodge Nursing Home, Inc. was officially dissolved on January 10, 1979 upon the entry of an order of the Massachusetts Supreme Judicial Court pursuant to M.G.L. ch. 156B, § 101. Pursuant to M.G.L. ch. 156B, § 102, a corporation is continued as a body corporate after dissolution for three years to, inter alia, settle and close its affairs.

9. An exception is made for providers who are financially unable to make lump sum repayments. These providers may repay the Commonwealth by way of deductions from future monies due the providers. See 106 C.M.R. 456.-703.

10. The Commonwealth bases its right to recover on M.G.L. ch. 18, § 5E which provides: "Any recipient or vendor who receives payment under any assistance program administered by the department, to which he is not entitled, shall return such payment to the Commonwealth by paying the same to the state treasurer as soon as demand is made upon him."

ly, the Commonwealth argues, it has not consented to be bound by the statute of limitations contained in M.G.L. ch. 260, § 2 and under principles of sovereign immunity, must so consent either expressly or by implication. The plaintiff next argues that assuming, *arguendo*, the six year contractual statute of limitations applies, its cause of action did not accrue until April 28, 1975 when the Commonwealth established the final rate for the home's last year of operation under the Medicaid program. It is at that time a demand was made under M.G.L. ch. 18, § 5E which section requires a demand be made as a prerequisite for repayment. The prior termination of participation by a nursing home in the Medicaid program is irrelevant to the question of the date on which the Commonwealth's cause of action arose. As under the federal Medicare statute, the plaintiff states, the date the final rates are established controls. Until the final audit is completed, there can be no cause of action—no liability. The Commonwealth argues it is not seeking repayment of individual yearly overpayments but is instead seeking repayment of the total amount overpaid the homes by the Commonwealth for the years of participation, based upon final rates. That total amount must necessarily await the setting of all final rates. Therefore, it contends that the relationship between the parties is one of a "mutual and open account current" within the meaning of M.G.L. ch. 260, § 6.

In their reply brief, the debtors argue that pursuant to M.G.L. ch. 260, § 18,[11] the Commonwealth has consented to be bound by the statute of limitations contained in M.G.L. ch. 260, § 2. This serves the public policy of protecting providers against long over-due causes of action by whomever chooses to commence suit. Furthermore, M.G.L. ch. 18, § 5E provides statutory authority to recover overpayments which is, in essence, founded in contractual rights. The debtors also state that although a statute creating a cause of action does not contain a statute of limitations, it does not necessarily mean there is no applicable

statute of limitations. Indeed, the debtors cite a recent Massachusetts case which holds that where the legislature intends that no statute limitation will apply, it makes this intent clear. Lastly, the debtors claim that even though the Commonwealth seeks repayment of the total amount overpaid, for the years 1968–1972, this total amount is comprised of amounts due yearly and is not a mutual and open account current.

## DISCUSSION

### 1. Statute of Limitations.

▮ The burden of proof on the issue of the statute of limitations rests with the plaintiff. *Newburgh v. Florsheim Shoe Co.*, 200 F.Supp. 599 (D.Mass.1961) and *Sutherland v. MacLeod*, 311 Mass. 295, 41 N.E.2d 9 (1942). It is a well-settled principle of law that a state is not subject to a statute of limitations unless it consents to be bound. *Boston v. Nielsen*, 305 Mass. 429, 26 N.E.2d 366 (1940). Here, the Commonwealth of Massachusetts has consented to be bound by the six-year statute of limitations applicable to actions of contract brought by it as evidenced by M.G.L. ch. 260, § 18. *See supra*, n. 11; *see also Attorney General v. Trustees of Boston Elevated Railway Co.*, 319 Mass. 642, 67 N.E.2d 676 (1946) and *New Bedford v. Lloyd Investment Associates, Inc.*, 363 Mass. 112, 292 N.E.2d 688 (1973) (action by a municipality for recovery of money paid by mistake is subject to the six-year statute of limitations under M.G.L. ch. 260, §§ 2 and 18).

The Massachusetts Supreme Judicial Court explicitly rejected the argument of the Commonwealth that no statute of limitations applies in *Nantucket v. Beinecke*, 379 Mass. 345, 398 N.E.2d 458 (1979) wherein the court had to determine whether a statute of limitations applied to a claim brought by a governmental entity under the Commonwealth's conflict of interest statute. The court explained:

---

**11.** M.G.L. ch. 260, § 18 provides in relevant part: "The limitations of the preceding sections of this chapter ... shall apply to actions brought by or for the Commonwealth."

We consider first the question of which, if any, statute of limitations governs actions brought under the Conflict of Interest Law, G.L. c. 268A, § 21. The plaintiff contends that actions brought under G.L. c. 268A, § 21, are not governed by any statute of limitations. We disagree. On other occasions, when faced with similar claims relating to a new right created by a statute which, as here, contained no limitation provision within itself, this court has looked to the essential nature of the right to determine which statute of limitations should be applied (citations omitted).

We find nothing in the legislative history of G.L. c. 268A, § 21, which would suggest that the Legislature, by not specifically prescribing a period of time within which an action under § 21 must be brought, intended that such actions not be time-limited. *If such a result had been intended, it would have been natural for the Legislature to express such an intention. Id.* at 348, 398 N.E.2d at 459–60 (emphasis added).

■ Despite the statutory support of M.G.L. ch. 18, § 15E for the Commonwealth's claim, the essential nature of the Commonwealth's right to recover for overpayments made to a provider of health services under the Medicaid Program is contractual, and therefore, the six-year statute of limitations is applicable. The Supreme Judicial Court has recently characterized the relationship between the Department of Public Welfare and a provider of health services entitled to Medicaid funds as a "contractual relationship" which "arises out of a statutory liability." *Sargeant v. Commissioner of Public Welfare,* 383 Mass. 808, 423 N.E.2d 755, 762 (1981). *Cf. Massachusetts General Hospital v. Commissioner of Public Welfare,* 359 Mass. 206, 268 N.E.2d 654 (1971); *Boston v. Gordon,* 342 Mass. 586, 175 N.E.2d 377 (1961) (statutory right of tax collector to recover unpaid taxes is one of contract to which the six-year period of limitation applies); *Houghton v. Keveney,* 230 Mass. 49, 119 N.E. 447 (1918) (statutory right of action of a customer against his stockbroker is one of contract to which the six-year

period of limitations is applicable); and *Bradford v. Storey,* 189 Mass. 104, 75 N.E. 256 (1905) (action by tax collector to recover taxes not subject to six-year statute of limitations as not founded upon a contract).

In the instant case, the plaintiff's claims are based on the defendants' obligation to repay alleged overpayments. This obligation arises from the vendee-vendor relationship entered into by the Commonwealth and the defendants. As a provider of nursing home services to Medicaid recipients, the defendants were required to "agree to comply with all laws, rules and regulations governing the operation of the [Medicaid] program." M.G.L. ch. 118E, § 18(4). These "laws, rules and regulations" included the defendant's liability for any overpayment. As authorized by 42 C.F.R. § 447, the Commonwealth has adopted a retrospective payment system which is administered by the Massachusetts Rate Setting Commission. M.G.L. ch. 6A, §§ 31–36. This retrospective payment system allows payments to be made on the basis of an interim rate and adjusted retrospectively to the final rate. *See* 42 C.F.R. § 447.272 and M.G.L. ch. 6A, §§ 31–36. Thus, the defendants agreed to accept both payments determined under the applicable interim rates and liability for any overpayments later established. Accordingly, the Commonwealth's claim for repayment is grounded in contract, and therefore, the six-year statute of limitations of M.G.L. ch. 260, § 2 is applicable. *Cf. Perkins School for the Blind v. Rate Setting Commission,* 383 Mass. 825, 423 N.E.2d 765 (1981).

### 2. Mutual and Open Account Current

■ M.G.L. ch. 260, § 6 reads: "In an action of contract brought to recover the balance due upon a mutual and open account current, the cause of action shall be held to have accrued at the time of the last item proved in the account." The Massachusetts courts in interpreting the phrase "mutual and open account" have consistently held that the mere existence of indebtedness on each side which might be set off does not create a "mutual and open

account current". *See Boston v. Nielsen, supra; Howland v. Stowe,* 290 Mass. 142, 194 N.E. 888 (1935); *Houghton v. Keveney, supra;* and *Harding v. Covell,* 217 Mass. 120, 104 N.E. 452 (1914). The essential factor is "that there must be a mutual agreement, express or implied, that the items of the account upon the one side and the other are to be set against each other. In other words, there must be one account upon which the items on either side belong, and upon which they operate to extinguish each other *pro tanto,* so that the balance on either side is the debt between the parties .... It is not enough that there should be mutual debts, but they must, by agreement of the parties, be parts of one account ...." *Eldridge v. Smith,* 144 Mass. 35, 36, 10 N.E. 717, 718 (1887); *see also Harding v. Covell supra,* 217 Mass., at 123 and 104 N.E. at 453 (must be a mutual agreement that a set-off should be made). If the account is a "mutual and open account current" and some of the items accrued within the six-year limitation, none of the items will be barred by the statute of limitations.

The only right of set-off created under the Medicaid program appears to be a procedural device which allows the Commonwealth to obtain repayment of a liability for overpayments to a nursing home which it could not otherwise recover. This one-sided, procedure does not possess the elements of a mutual agreement to set-off corresponding debits and credits essential to establishing a mutual and open account. *See generally* Annot., 45 A.L.R.3d 446 (1972).

Only one Massachusetts case has even suggested, in dicta, that the relationship between the Department of Public Welfare and a provider nursing home created a "mutual and open account current." *Haverhill Manor, Inc., v. Commissioner of*

*Public Welfare,* 368 Mass. 15, 330 N.E.2d 180, *cert. denied,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975). The court therein merely analogized the financial relationship between the Department of Public Welfare and the nursing home to one involving "parties doing business which would create a 'mutual and open account current' or a simple 'running (open) account.'" *Id.* at 22 and 330 N.E.2d at 186. The court was concerned solely with the issue of whether the Department of Public Welfare could legally effect an offset of past overpayments against current payments for services rendered by the nursing home. The court upheld the Commissioner's offset as an expeditious procedure for recapturing funds owed to the Commonwealth which would avoid the necessity of litigation, despite the absence of express statutory authorization. The court was not faced with a statute of limitations question.[12] Moreover, the Seventh Circuit, in determining whether the six-year statute of limitations barred the United States from recovering alleged overpayments made to a provider of services under the Medicare program, explicitly rejected the characterization of the Medicare reimbursement plan as an "open account". *United States v. Withrow,* 593 F.2d 802, 804 (7th Cir.1979).

3. Accrual of Cause of Action.

It appears it is now settled in the First Circuit that the United States' cause of action to recover alleged overpayments made to a provider nursing home under the Medicare program arises, to the extent the dates do not coincide, at the time a final retroactive adjustment is made rather than at the time of the final audit. *United States v. Hughes House Nursing Home, Inc.,* 710 F.2d 891 (1st Cir.1983); *see also United States v. Gravette Manor Homes, Inc.,* 642 F.2d 231 (8th Cir.1981); *United*

**12.** The case of *In re Dartmouth House Nursing Home, Inc.,* 24 B.R. 256 (Bankr.D.Mass.1982) referred to *Haverhill Manor, Inc. v. Commissioner of Public Welfare, supra* and the court's characterization of the provider—Commonwealth relationship as a "mutual and open account current" but was actually addressing, *inter alia,* the question of whether the state-created right of set-off is suspended by intervening bankruptcy proceedings. On this point, *see also In re Yonkers Hamilton Sanitarium Inc.,* 22 B.R. 427 (Bankr.S.D.N.Y.1982), *aff'd,* 34 B.R. 385 (S.D.N.Y.1983) (deductions of overpayments under Medicare statute are not subject to provision of Bankruptcy Code governing setoffs because are in nature of recoupments).

States v. White House Manor Nursing Home, Inc., 484 F.Supp. 29 (M.D.Fla.1979); and United States v. Graham, 471 F.Supp. 123 (S.D.Tex.1979). The cases of United States v. Withrow, 593 F.2d 802 (7th Cir. 1979) and United States v. Normandy House Nursing Home, Inc., 428 F.Supp. 421 (D.Mass.1977) hold that a cause of action accrues at the time a final audit is completed. As the First Circuit observed in United States v. Hughes House Nursing Home, Inc., supra, these latter cases did not "[focus] on the difference between the audit and the final adjustment [dates]. Apparently they assume[d] that the dates of these two events virtually coincided, or that the difference was not relevant to the cases before them." Id. at 894; see also In re Townview Nursing Home, 28 B.R. 431 (Bankr.S.D.N.Y.1983).

The defendants have failed to allege that the final rates were not timely set, in contravention of any statute or regulation then in effect. The Court having found that the relationship between the parties did not create a "mutual and open account current", each year must be treated separately. Accordingly, the Commonwealth's cause of action to recover for the years 1968, 1969, and 1970 is barred by the six-year statute of limitations. The cause of action for the year 1971[13] is not barred.

## ORDER

There being no genuine issue as to any material fact, the debtors' motion is ALLOWED in part and DENIED in part.[14]

---

**13.** See supra, n. 4.

**14.** See, e.g., Adickes v. S.H. Kress Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and

Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).