**UNITED STATES of America**

v.

**NORMANDY HOUSE NURSING HOME, INC., and William D'Annolfo.**

Civ. A. No. 75–950–F.

United States District Court,
D. Massachusetts.

Feb. 16, 1977.

Judith Hale Norris, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Roger S. Davis, Boston, Mass., for defendants.

## ORDER

FREEDMAN, District Judge.

This matter is before the Court on motions by both defendants for dismissal. Defendant Normandy House Nursing Home, Inc. (Normandy House) argues that plaintiff's action was commenced after the expiration of the statute of limitations. Defendant William D'Annolfo, in addition to raising the statute of limitations defense, claims that plaintiff's complaint fails to state a cause upon which relief can be granted, and that the complaint is based upon a written agreement between plaintiff and Normandy House as to which D'Annolfo was not a party. After consideration of the arguments by all the parties, as well as the record and relevant authorities, I am of the opinion that both motions to dismiss should be denied.

Pursuant to the program set forth in the Health Insurance for the Aged Act, 42 U.S.C. § 1395, *et seq.*, more commonly known as Medicare, defendant Normandy House entered into an agreement dated December 19, 1966, with the Department of Health, Education, and Welfare (HEW) to provide services to beneficiaries in its nursing home in return for HEW making payments to reimburse it for the costs incurred. In order to carry out the agreement, HEW entered into another contract with Massachusetts Blue Cross, Inc. 42 U.S.C. § 1395g and 20 C.F.R. § 405.454 require that regular payments be made to providers "not less often than monthly" and prior to any audit of their cost statements. Blue Cross was to provide Normandy House with such payments and, at the end of the reporting period, to make an audit to determine whether Normandy House had been underpaid or overpaid for the services it provided.

Under the Medicare program, a provider of services such as Normandy House sub-

mits an annual cost report. It is then granted immediate payments prior to an audit being conducted. The rationale for this procedure is that a provider should be reimbursed as quickly as possible. 20 C.F.R. § 405.454(f)(2). One of the program's main concerns is that providers of services be given a steady flow of money so that they will have the finances to take care of Medicare's beneficiaries in an uninterrupted manner. By allowing annual cost reports to be submitted and initially relied upon, not only can this be achieved, but providers can also "keep pace with growing needs and . . . make improvements." *Id.* § 405.402(b)(6).

Another concern of the program whereby providers receive payments is that the government pay only the reasonable cost of the services rendered to beneficiaries. Thus, in the case of each provider, an audit must ultimately be made to determine the final liability of the program and make possible a final adjustment, *id.* § 405.-454(f)(2), whether it be for underpayment or overpayment. 42 U.S.C. § 1395g.

Under its 1966 agreement with HEW, Normandy House operated as a provider during the years 1967, 1968, and 1969. On the basis of cost reports submitted for those years, Normandy House was paid almost two million dollars. In 1970, an audit was completed by Blue Cross on Normandy House's 1967 cost report. Audits for the 1968 and 1969 reports were completed in 1971. As alleged in plaintiff's complaint, these audits determined that Normandy House had been overpaid $259,074.00 for the years 1967 through 1969. Plaintiff further claims that despite demands, defendants have failed to return that amount.

■ As already stated, both defendants argue that the statute of limitations bars plaintiff from bringing this action against them. I do not agree. The applicable statute provides in pertinent part:

Subject to the provisions of section 2416 of this title, . . . every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract ex-

press or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . . .

28 U.S.C. § 2415(a). Section 2416, to which the above section refers, states in part:

For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which—

(c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances . . . . .

Defendants take the position that plaintiff's right of action accrued at the time the overpayments were made. Plaintiff makes the obvious response that prior to the making of an audit, Medicare payments such as those involved herein "are deemed to be interim and subject to later adjustments." It continues that since "[t]he actual amounts owed to Normandy were only determined, as contemplated by statute, in 1970 and 1971, . . . only at these dates did the government's right of action for overpayments arise." I believe that this is the proper approach to the statute of limitations issue. By the very nature of the procedure for Medicare payments, already discussed, it cannot be said that plaintiff knew or reasonably could have known of the facts material to its right of action prior to the time the appropriate audits were made. To this position, defendants claim that "[t]o follow the plaintiff's argument, if the governmental agency decided to perform an audit ten years after the alleged overpayment, the statute would be tolled until such audit." In such an instance, defendants' argument might have some validity. That is not the case here, however. Plaintiff was not acting unreasonably in having audits made at the time it did. Before that time, it could not have known that there had been overpayments to Normandy House. Plaintiff's cause of action did not, therefore, arise until the audits of Normandy House's cost reports had been completed.

The statute of limitations does not bar plaintiff's suit.

■ Beyond the statute of limitations argument, defendant D'Annolfo claims that plaintiff's complaint has failed to state a cause of action against him upon which relief can be granted since a stockholder of a corporation may not be held liable for the debts of that corporation simply by virtue of being a stockholder. In addition he argues that plaintiff has no cause of action against him because he was not a party to the written agreement involved herein. Although both of these contentions could certainly be discussed at length, I feel that the circumstances in this case entitle plaintiff to bring suit against D'Annolfo for the alleged overpayments. Arguably, D'Annolfo was not a party to the agreement involved herein, even though he signed it as President of Normandy House. In addition, I am aware of the general principle that stockholders and officers of corporations are not generally held responsible for the liabilities of the corporation. However, in the instant case, when one considers that in addition to being president, D'Annolfo was Normandy House's sole stockholder, and that the premises upon which the nursing home operated were owned by a trust in which D'Annolfo has a lifetime beneficial interest, the argument that he should be held personally liable for the alleged overpayments becomes tenable. Any doubts that this Court has as to plaintiff's ability to bring suit against D'Annolfo are satisfied by the fact that Normandy House had sold all of its assets and had gone out of the nursing home business in December, 1969, the time when audits involved in this case were beginning.

Although the mere fact than an individual is the sole stockholder of a corporation will not by itself make him liable as the alter ego of the corporation, *see, e. g., El Salto, S. A. v. PSG Co.*, 444 F.2d 477, 483 (9th Cir. 1971), *cert. denied*, 404 U.S. 940, 92 S.Ct. 273, 30 L.Ed.2d 253 (1971), there is more presented here. I can not ignore the possibility that the sale of Normandy House's assets was to avoid the return to HEW of the overpayments alleged in plaintiff's complaint. Defendants argue that "[n]owhere in the plaintiff's Complaint is there any allegation of a wrongful or fraudulent conveyance," and that the only basis for such an allegation is found in plaintiff's memorandum in opposition to defendants' motions to dismiss. Apparently, by that assertion, defendants are taking the position that since no proper allegation has been made as to a fraudulent conveyance involving D'Annolfo, it is the corporation that should be liable here, if anyone, and not D'Annolfo. I cannot agree. As one court has stated

> [d]espite the absence of allegations of actual fraud, equitable considerations and the plain justice of a situation, depending upon the facts, may lead to a piercing of the corporate veil in some cases, especially those involving "one-man" or family corporations.

*Francis O'Day Co. v. Shapiro*, 105 U.S.App. D.C. 392, 267 F.2d 669, 673, n. 11 (1959). *See Quinn v. Butz*, 166 U.S.App.D.C. 363, 510 F.2d 743, 759 (1975). I believe that the facts in this case justify going beyond plaintiff merely bringing suit against Normandy House. D'Annolfo is a proper defendant herein.

A somewhat different approach to the conclusion that plaintiff has a cause of action against D'Annolfo is the argument that the corporate entity may be disregarded where failure to do so would lead to circumvention of a statute or avoidance of a clear legislative purpose. There is certainly case law to support such a position. *See, e. g., Bruhn's Freezer Meats of Chicago, Inc. v. United States Department of Agriculture*, 438 F.2d 1332, 1343 (8th Cir. 1971); *Maley v. Carroll*, 381 F.2d 147, 154 (5th Cir. 1967). It has been stated in our own circuit that

> [h]owever important it may be in other respects, the fiction of the corporate entity cannot stand athwart sound regulatory procedure.

*H. P. Lambert Co. v. Secretary of the Treasury*, 354 F.2d 819, 822 (1st Cir. 1965). One court has more recently stated that

"[t]o carry out statutory objectives, it is frequently necessary to seek out and give weight to the identity and characteristics of the controlling officers and stockholders of a corporation."

*Quinn v. Butz, supra,* at 759 (quoting from *Mansfield Journal Co. v. F. C. C.,* 86 U.S. App.D.C. 102, 180 F.2d 28, 37 (1950) (footnote omitted).

Keeping in mind the statutory language and aims of the Health Insurance for the Aged Act, I believe that the above argument also serves as a sufficient basis for allowing plaintiff to bring its action against defendant D'Annolfo. It can certainly be argued, under the circumstances presented in this case, that there has been circumvention of one of the goals of the Medicare program and its system of making payments to providers of services to Medicare beneficiaries—that the government is charged for no more than the reasonable cost of services being rendered.

Accordingly motions to dismiss brought by defendants Normandy House and William D'Annolfo are hereby denied.