**UNITED STATES of America**

**v.**

**Norman E. GRAHAM, d/b/a Tomball Hospital.**

**Civ. A. No. 76–H–1225.**

United States District Court, S. D. Texas, Houston Division.

March 27, 1979.

Arthur R. Amdur, Asst. U. S. Atty., Houston, Tex., for plaintiff.

Wood, Lucksinger & Epstein, Bill R. Bludworth, Houston, Tex., for defendant.

**MEMORANDUM AND ORDER:**

STERLING, District Judge.

Presently pending before the court are Defendant's motion for summary judgment

and Plaintiff's cross-motion for summary judgment. The United States brought this suit to recover alleged overpayments made to Defendant from January 1, 1968, to August 31, 1969, when Defendant was a participating hospital in the Medicare Program. 42 U.S.C. § 1395 *et seq.*

Under the Medicare Program, participating hospitals agree to provide services to the aged. The hospitals are reimbursed for the reasonable costs of these services by the Department of Health, Education and Welfare. The Medicare Program authorizes the HEW to employ fiscal intermediaries, in this case Blue Cross of Texas and Group Hospital Service, Inc., to handle the payment of funds to the hospitals. 42 U.S.C. § 1395h. In order to ease possible cash flow problems for the hospital, the intermediary is required to make interim payments to the hospital at least once a month. 42 U.S.C. § 1395g and 20 C.F.R. § 405.454 (later recodified at 42 C.F.R. Part 405). These interim payments are intended to approximate the actual reasonable costs of the services provided. Participating hospitals are required to submit annual cost reports to the fiscal intermediary. An initial retroactive adjustment is made by the intermediary based on the submitted cost report. Later, the cost report is audited and a final retroactive adjustment is made for the value of services actually provided by the hospital for the year. 20 C.F.R. § 405.454(f)(2). Based on an audit of Defendant's cost reports for the periods ending December 31, 1968, and August 31, 1969, the government has determined that Defendant has received $59,063.00 in overpayments.

Defendant contends that this action is barred by the statute of limitations. The parties agree that 28 U.S.C. § 2415 is applicable. In relevant part, the statute reads:

"(a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . ."

Section 2416 tolls the limitations period under certain circumstances. In relevant part, it provides:

"For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which—

" . . .

"(c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances . . . ."

The parties disagree as to when the Plaintiff's right of action accrued. Plaintiff contends that its right of action did not accrue until after the cost reports submitted by Defendant were audited. Defendant contends that the right of action accrues at the moment Plaintiff, acting though the intermediary, became aware that there had been an overpayment of some amount to Defendant. Defendant relies on an opinion regarding accrual contained in a General Accounting Office report to the Secretary of HEW, No. B-117604(170), April 4, 1975. The GAO statement on the statute of limitations stated:

"For the purposes of processing such debts, where a cost report has been filed, the statute must be deemed to start running from the date an 'official of the United States charged with the responsibility to act in the circumstances' first discovers, or is in such position that he reasonably should have discovered, the overpayment, regardless of whether such first discovery is made in the cost report as filed by the provider or in the subsequent desk review or audit. He must consider the *first* discovery as the start of the period, regardless of whether changes are made in the amount of the debt during subsequent review or audit."

■ This first notice approach is supported by some of the cases which have grappled with limitations defenses in Medicare overpayment cases. *See, e. g., United States v. Elliott General Hospital,* No. 6–

70481 (E.D.Mich. filed Oct. 22, 1976). This approach confuses the tolling provision of section 2416 with the accrual of the cause of action. Generally a right of action arises with the occurrence of the final significant event necessary to make the claim suable. *Mack Trucks, Inc. v. Bendix Westinghouse Automotive Air Brake Co.,* 372 F.2d 18 (3rd Cir.), *cert. denied,* 387 U.S. 390, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967). The regulations promulgated pursuant to 42 U.S.C. § 1395g provide specific procedures to be followed to determine whether a participating hospital has been overpaid or underpaid. 20 C.F.R. § 405.454(f)(1) states that "[a]ctual costs reimbursable to a provider cannot be determined until the cost reports are filed and costs are verified." 20 C.F.R. § 405.454(f)(2) states that "[w]hen an audit is made and the final liability of the program is determined, a final adjustment will be made."

■ A number of courts have held that the government's right of action to recover Medicare overpayments accrues with the completion of the audit. *See, United States v. Normandy House Nursing Home, Inc.,* 428 F.Supp. 421 (D.Mass.1977); *United States v. Gottlieb,* 424 F.Supp. 417 (S.D.Fla. 1976); *United States v. Helen Wilkes Corp.,* No. WPB–76–8109–Civ.Cf. (S.D.Fla. filed Dec. 6, 1976). Other courts have opted for an even later date of accrual. In *United States v. Slavik,* No. 76–314–WMB (C.D. Cal. filed June 22, 1977), and in *United States v. W. A. Forrest,* No. 74–C–380 (N.D. Okl. filed Aug. 15, 1975), the courts held that the government's cause of action accrued at the time the fiscal intermediary makes a final adjustment, that is, when it receives and acts upon an audit of the provider's cost reports. This court holds that the government's cause of action accrues with the making of the final retroactive adjustment as contemplated in 20 C.F.R. § 405.454(f)(2) and (3).

The certified records of HEW indicate that Defendant's cost report for 1968 was submitted to the intermediary on July 17, 1969. On May 22, 1970, Ernst & Ernst, Certified Public Accountants, reported its initial audit findings to the intermediary. On January 15, 1971, the auditor's final adjustment reported that Defendant had received $49,078.00 in overpayments. (See, R–95, Plaintiff's Exhibit B.) On January 22, 1971, Plaintiff notified Defendant of the $49,078.00 in overpayments. The January 15 date is the crucial date for statute of limitations purposes. Although the May 22 report indicated possible areas of overpayments, the auditors were not able to express an opinion as to the reasonableness of costs reported by Defendant due to various deficiencies in Defendant's accounting system and records. The fact that the government might have known that overpayments were made as of May 22, 1970, is not determinative. This court finds persuasive the reasoning of the court in *Elliott General, supra*:

"It may be true that the government knew that it had made overpayments, but this is not to say it knew the *amount* of these overpayments; moreover, other claims and items could have been disallowed by subsequent inspection and audit. Further, the government may have discovered, through its audit process, that it had made underpayments (which may have set off the amount of overpayments in part or *in toto*)."

Under the regulatory procedures promulgated pursuant to 42 U.S.C. § 1395g, the *amount* of the overpayments or underpayments is not determined until "an audit is made and the final liability of the program is determined." 20 C.F.R. § 405.454(f)(2). The May 22, 1970, initial auditor's report was not sufficient to determine the final amount due to the Medicare Program. The use of that date as the time of accrual of the government's cause of action would be especially inappropriate in this case where the inability to make the final retroactive adjustment was the result of the deficiency of the records supplied by Defendant.

The final retroactive adjustment for 1968 was made by the auditors on January 15, 1971, and for 1969 it was made on November 23, 1971. Plaintiff's complaint was filed July 21, 1976, and, therefore, Plain-

tiff's cause of action is not barred by the statute of limitations. Defendant's motion for summary judgment will be denied.

█ Plaintiff has filed a cross-motion for summary judgment based on the failure of Defendant to exhaust administrative remedies and its position that 42 U.S.C. § 405(h), incorporated into the Medicare Act by 42 U.S.C. § 1395ii, bars federal district court review of the hospital's defenses in a case such as this where the cost report year ended prior to June 30, 1973. Adverse cost reports for periods ending after June 30, 1973, are to be appealed by participating hospitals to the Provider Reimbursement Review Board. Decisions by the Board or the Health Care Financing Administrator's reversal of the Board's decision may then be appealed to federal district court. 42 U.S.C. § 1395oo(f); 20 C.F.R. § 405.1835 *et seq.* A provider could request an intermediary hearing on cost report years ending prior to June 30, 1973. 20 C.F.R. § 405.-1811. Section 405.1817 states:

"The intermediary hearing provided for in § 405.1809 shall be conducted by a hearing officer or panel of hearing officers designated by the intermediary. Such hearing officer or officers shall be persons knowledgeable in the field of health care reimbursement. The hearing officer or officers shall not have had any direct responsibility for the program reimbursement determination with respect to which a request for hearing is filed; no hearing officer (or officers) shall conduct a hearing in a case in which he is prejudiced or partial with respect to any party, or where he has any interest in the matter pending for determination before him. Notice of any objection which a party may have with respect to a hearing officer shall be presented in writing to such officer by the objecting party at the party's earliest opportunity. The hearing officer shall consider the objection and shall, at his discretion, either proceed in the conduct of the hearing or withdraw. If the hearing officer does not withdraw, the objecting party may, after the hearing, present his objections to an executive official of the intermediary, who shall rule promptly on the objection."

The decision of the hearing officers is final. Section 405.1833. It is undisputed that Defendant failed to exhaust the administrative appellate remedies available to him to contest the intermediary's final retroactive adjustment.

In *Ulman v. United States,* 558 F.2d 1, 7, 8 (Ct.Cl.1977), in granting a cross-motion for summary judgment, the court stated:

"Where an administrative appeal is compulsory prior to invoking the aid of a court, it does not matter that the party who failed to pursue such appeal is petitioning the court for relief or defending an action brought against him. In either situation, the failure to pursue the prescribed administrative course effectively prohibits him from raising in court the merits of his claim or defense which could have been entertained administratively in the first instance."

Based on the foregoing, Plaintiff is entitled to summary judgment as there no longer remains any issue of material fact, and Plaintiff is entitled to judgment as a matter of law. Therefore, it is

ORDERED that Defendant's motion for summary judgment is DENIED. Plaintiff's cross-motion for summary judgment is GRANTED.