**UNITED STATES of America, Plaintiff,**

v.

**James W. THOMAS, M.D., and Smithville Hospital, Inc., Defendants.**

**Civ. A. No. SA75CA262.**

United States District Court,
W. D. Texas,
San Antonio Division.

June 12, 1981.

Hugh P. Shovlin, Asst. U. S. Atty., San Antonio, Tex., Suzanne Cochran, Asst. Regional Atty., Dallas, Tex., for plaintiff.

J. Stockton Williams, Jr., Austin, Tex., for defendants.

## SUMMARY JUDGMENT

SPEARS, District Judge.

On this day came on for consideration the plaintiff's motion for summary judgment in the above entitled cause, with its accompanying briefs, affidavits, and depositions filed in support thereof, and the defendants' controverting affidavits and objections filed in response thereto. After conducting a hearing on the merits of said motion, at which time all of the parties were afforded an opportunity to present oral argument in support of their respective positions, and after duly considering the pleadings, depositions, answers to interrogatories, admissions, affidavits, and exhibits on file herein, the Court is of the opinion that there is no genuine issue of material fact, and that plaintiff, therefore, is entitled to judgment as a matter of law.

This suit was instituted by the United States, on behalf of the Department of Health, Education, and Welfare (Department of Health and Human Services), to recover alleged medicare overpayments made to the defendant, Smithville Hospital, Inc., during the years 1967–1972. Prior to its involuntary dissolution in 1974, Smithville Hospital was solely owned and controlled by defendant, Dr. James W. Thomas.

## I.

### The Medicare System, 42 U.S.C. § 1395 et seq. (1974) [1]

Federal Health Insurance for the Aged, known as medicare, was enacted to ensure "free" [2] medical services for persons aged 65 and older. See 42 U.S.C. § 1395c (1975–1980 Supp.). The system is administered by private, non-governmental "fiscal intermediaries", which are usually large health and accident insurance companies. See 42 U.S.C. § 1395u (1974); 42 U.S.C. § 1395h (1975–1980 Supp.). The intermediaries, to insure "providers" of medicare services an adequate cash flow while providing free medical treatment to covered beneficiaries, make interim payments to the providers for the estimated reasonable costs of such services. See 42 U.S.C. §§ 1395g, 1395x(v) (1975–1980 Supp.). These payments represent mere approximations of costs that will properly be chargeable to medicare for the fiscal year. An annual audit of each provider's account is conducted by the intermediary at year end to adjust interim disbursements for any overpayments or underpayments. See 42 U.S.C. §§ 1395u, 1395x(v), 1395mm(a) (1974). Overpayments may be recouped by the government. See *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329, 337–39 (5th Cir. 1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976); *Szekely v. Florida Medical Assoc.*, 517 F.2d 345, 349 (5th Cir. 1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976).

In 1973, the Medicare Act was amended to establish a comprehensive procedure for reviewing disputes arising from the annual cost adjustments. See 42 U.S.C. § 1395oo (1974). Prior to 1973, however, the Act's numerous review provisions did not explicitly provide for judicial review of intermediary readjustment claims. See *Chelsea Community Hospital v. Michigan Blue Cross*, 630 F.2d 1131, 1133 (6th Cir. 1980). For pre-1973 claims, a provider was required to request an intermediary hearing on contested cost adjustments. The hearing was con-

1. *See generally Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329, 334–36 (5th Cir. 1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976).

2. Under the Act, eligible health-care institutions, denoted "providers", agree not to charge medicare beneficiaries for services rendered, but rather, look to the medicare trust fund for payment. See 42 U.S.C. §§ 1395d, 1395cc (1974).

ducted by impartial persons knowledgeable in the field of health care reimbursement, and the decision of the hearing officer was final. *See generally United States v. Fairlane Convalescent Homes, Inc.,* 501 F.Supp. 863, 869 (E.D.Mich.1980); *United States v. Graham,* 471 F.Supp. 123, 126 (S.D.Tex. 1979); *Pacific Coast Medical Enterprises v. Califano,* 440 F.Supp. 296, 301–302, 309–10 (C.D.Cal.1977), *affirmed sub nom. Pacific Coast Medical Enterprises v. Harris,* 633 F.2d 123 (9th Cir. 1980).

## II.

### *The Instant Facts*

Smithville Hospital, Inc., the provider herein, participated in the Medicare Program from June 30, 1967 until April 1, 1972 (plaintiff's undisputed fact 1). During this time, Group Hospital Service, Inc., the intermediary, made interim payments to Smithville, on behalf of the government, for covered services provided to medicare beneficiaries. Based on the cost reports and records submitted by Smithville for the years 1967–1972, the intermediary determined that medicare overpayments to Smithville amounted to $62,904.00.[3] No administrative appeal was subsequently taken by the provider (plaintiff's undisputed fact 7).

Thereafter, the government initiated this action to recoup the alleged overpayments. Pursuant to a joint motion of the parties, and to promote settlement of the controversy, the lawsuit was stayed indefinitely pending an independent administrative determination by HEW concerning whether Smithville, and Dr. Thomas, individually, were liable to the United States for the entire $62,904.00 (see Court Order of December 14, 1976, and accompanying "Agreed, Joint Motion to Stay Proceedings"). Approximately three years later, the agency concluded that the defendants were entitled to a $12,000.00 set off against

the indebtedness due, and the government, accordingly, filed its second amended complaint reflecting the set off (plaintiff's undisputed fact 13; see "Second Amended Complaint"). Defendants have refused to make payment (plaintiff's undisputed fact 25).

At all times pertinent to this action, Dr. James W. Thomas was director and sole shareholder of Smithville Hospital (plaintiff's undisputed fact 17). The hospital, after transferring its assets to Smithville Hospital Authority in 1972, paid off outstanding debts, redeemed its stock, and ceased doing business under the name of Smithville Hospital, Inc. (plaintiff's undisputed facts 20–24). The corporate charter was forfeited in 1974 for failure to pay corporate franchise taxes (Thomas deposition at 126–27).

## III.

### *Summary Judgment*

**A. Failure to Exhaust Administrative Remedies**

In its motion for summary judgment, the government contends that defendants' failure to exhaust the administrative remedies available under the Act bars judicial review of the defendants' claims.

█ There is substantial authority in this Circuit for the proposition that 42 U.S.C. § 405(h) precludes district court review of pre-1973 provider reimbursement disputes. *See Homan & Crimen, Inc. v. Harris,* 626 F.2d 1201, 1206 (5th Cir. 1980); *Dr. John T. McDonald Foundation v. Califano,* 571 F.2d 328, 330–32 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); *United States v. White House Nursing Home,* 484 F.Supp. 29, 31 (M.D.Fla. 1979). Section 405(h), incorporated into the Medicare Act by 42 U.S.C. § 1395ii, states in pertinent part:

**3.** The fiscal intermediary actually found overpayments in the total amount of $66,266.00. Defendants subsequently made payments of this indebtedness, reducing the sum sued for to $62,904.00 (plaintiff's undisputed facts 5, 6).

For a breakdown of reimbursements allegedly due the government, computed on an annual basis, see the "Certificate of Indebtedness" (Exhibit A, attached to the original and first amended complaints).

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided.

As previously noted, the Act did not authorize judicial review of pre-1973 provider reimbursement decisions. Consequently, the Court considers § 405(h) a sufficient basis upon which to uphold the intermediary's findings and determination.

■■■ This proposition aside, however, it has been held that the "final" nature of a hearing officer's decision in pre-1973 provider reimbursement controversies precludes judicial review.[4] A medicare provider that fails to exhaust the administrative remedies available to it cannot contest the intermediary's final retroactive adjustment. *United States v. Graham, supra,* 471 F.Supp. at 126; *see United States v. Ripley,* No. CA 4–77–351–E at 5–6 (N.D.Tex. Oct. 25, 1979); *cf. United States v. Fairlane Memorial Convalescent Homes, Inc., supra,* 501 F.Supp. at 866 n.4 (parties precluded from raising issues not argued in administrative proceedings). The undisputed facts in the instant case reveal that, although defendants were notified of the impending audit readjustments, they refused to challenge the disputed findings, or institute an appeal from the intermediary's determination. In fact, Smithville subsequently made payments to reduce the indebtedness (plaintiff's undisputed facts 3–10). Because the defendants failed to exhaust, prior to the initiation of this lawsuit, the Congressionally prescribed procedures for reviewing pre-1973 provider reimbursement claims, judicial review is barred. *See United States v. Graham, supra,* 471 F.Supp. at 126.

■■■ In connection with the exhaustion of remedies issue, it should be noted that this suit was continued indefinitely to allow the defendants a further opportunity to pursue all available administrative remedies. Instead of challenging the original audit adjustments, defendants merely submitted additional reimbursement claims to offset the alleged overpayments. Consequently, despite numerous opportunities, defendants have failed to utilize the prescribed administrative remedies to contest the validity or propriety of the original readjustments. Any defenses now raised by the defendants, therefore, which question the existence of overpayments and the government's right to recoup them, will not be considered. *See, e. g., U. S. v. Ruzicka,* 329 U.S. 287, 290, 67 S.Ct. 207, 208, 91 L.Ed. 290 (1946); *United States v. Southern Railway Co.,* 364 F.2d 86, 91–92 (5th Cir. 1977), *cert. denied,* 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592 (1967); *cf. Pacific Coast Medical Enterprises v. Harris, supra,* 633 F.2d at 138–39 ("it would not be appropriate . . . for the District Court to consider [claims] prior to exhaustion of administrative remedies.").

For the foregoing reasons, the Court is of the opinion that no issue of material fact remains for resolution.

**B. Judicial Review of Agency Determinations**

■■■ Assuming, however, that defendants' challenges to HEW's recoupment of the overpayments are reviewable by this Court, summary judgment is, nevertheless, proper, the government contends, because the administrative determination is committed to agency discretion, and is, therefore, not subject to *de novo* review.

> Congress' obvious desire [was] to commit the resolution of factual disputes to the technical expertise collected in an administrative agency. Consistent with such purpose, the court should largely defer to the determinations of the administrative tribunals duly constituted. 4K. Davis, Administrative Law § 30.09 (1958). We might properly review those findings to

---

4. The district court in *United States v. Graham,* 471 F.Supp. 123 (S.D.Tex.1979), while discussing the Medicare Program with respect to pre-1973 provider review, noted that "[a] provider could request an intermediary hearing on cost report years ending prior to June 30, 1973. 20 C.F.R. § 405.1811. . . . The decision of the hearing officer is final. Section 405.1833." *Id.* at 126.

be sure that they are not arbitrary or capricious or unsupported by substantial evidence, but beyond that we must recognize that our qualifications are limited and should limit our inquiry. *Overlook-Nursing Home, Inc. v. United States*, 556 F.2d 500, 502 (Ct.Cl.1977); *see, e. g., Tex. Acorn v. Tex. Area 5 Health Systems Agency*, 559 F.2d 1019, 1026 (5th Cir. 1977); *St. Louis University v. Blue Cross Hospital Association*, 537 F.2d 283, 289–91 (8th Cir. 1976).

After an extensive examination of the voluminous documents recording the administrative proceedings, the Court is of the opinion that the administrative review covered all relevant facts, and that the decision subsequently rendered by the agency was clearly "not arbitrary, capricious, or otherwise not in accordance with law." *See United States v. White House Nursing Home, supra*, 484 F.Supp. at 31. Accordingly, because the "decision was legal, without clear error, within the scope of the agency's authority, and not arbitrary or capricious", summary judgment is warranted. *Id.; accord, United States v. Fairlane Memorial Convalescent Homes, Inc., supra*, 501 F.Supp. at 874–75; *see United States of America v. Hilton Nursing Home, Inc.*, No. CIV. 74–752 PHX–CAM at 2 (D.Ariz. June 8, 1977).

C. Dr. Thomas' Personal Liability

Dr. Thomas, although the sole shareholder, president, and chairman of the board of Smithville Hospital (plaintiff's undisputed fact n. 17), nevertheless, contends that he is not personally liable for Smithville's debts. The Court finds, however, that there are sufficient undisputed facts to warrant imposing liability on Dr. Thomas to the extent the judgment is not satisfied by Smithville. ▮ Dr. Thomas may be held personally liable for the overpayments to Smithville under the so-called trust fund doctrine. According to this theory of recovery, stockholders are deemed constructive trustees of corporate assets distributed prior to the payment of valid claims of creditors. *See Pierce v. United States*, 255 U.S. 398, 402–

403, 41 S.Ct. 365, 366–367, 65 L.Ed. 697 (1921). As the Supreme Court stated in *Pierce,*

> [W]hen a corporation divests itself of all its assets by distributing them among the stockholders, those having unsatisfied claims against it may follow the assets, although the claims were contested and unliquidated at the time when the assets were distributed... A corporation cannot by divesting itself of all property leave remediless the holder of a contingent claim... and there is no good reason why the United States with a claim for penalties should be in a worse plight. Here the stockholders receiving the assets are in the position of volunteers; and there is not even the excuse that they were ignorant of the government's claim. They were officers of the corporation . . . .

*Id.* at 403, 41 S.Ct. at 367. Neither bad faith nor fraud is a prerequisite for recovery under this theory. *United States v. Slavik*, No. CV 76–0165–DWW at 8 (C.D. Cal. Jan. 4, 1977); *see United States v. Neidorf*, 522 F.2d 916, 918 (9th Cir. 1975).

In the instant case, the undisputed facts show that the proceeds from the sale of Smithville Hospital were used to pay creditors of the corporation, including Dr. Thomas, and to redeem corporate stock owned by Dr. Thomas, at a time when the corporation was without sufficient assets to pay the claim of the government (plaintiff's undisputed facts 20–24, Thomas deposition at 90–91). Moreover, although Dr. Thomas' actual knowledge of the government's claim, at the time the assets were distributed, is not an essential element of recovery under the trust fund theory, *see Pierce v. United States, supra*, 255 U.S. at 403, 41 S.Ct. at 367, it is clear from the documentary evidence that both Smithville Hospital and Dr. Thomas were notified of the impending governmental audit prior to the sale of its fixed assets to Smithville Hospital Authority, and that they were made aware of the disputed cost adjustments soon thereafter (Gill affidavit at 2–3; Thomas deposition at 57–62). These facts

establish the contingent claim theory discussed in *Pierce v. United States*, and support summary judgment based on the trust fund theory of personal liability. *See United States v. Slavik, supra*, at 8.

The Court is also of the opinion that there are sufficient facts to warrant piercing of the corporate veil. The corporate existence should be disregarded to "prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy...". *Zubik v. Zubik*, 384 F.2d 267, 272 (3rd Cir. 1967), *cert. denied*, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968); *see Homan & Crimen, Inc. v. Harris, supra*, 626 F.2d at 1208. It has been determined that circumvention of the medicare recoupment statute, through the insolvency of the provider, violates public policy. *See United States v. Pisani*, 646 F.2d 83, 88–89 (3rd Cir. 1981); *United States v. Normandy House Nursing Home, Inc.*, 428 F.Supp. 421, 424–25 (D.Mass.1977). In addition,

> failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders,

have been held factors justifying the imposition of personal liability for corporate debts. *See United States v. Pisani, supra*, 646 F.2d at 88, *quoting, Dewitt Truck Brokers v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 686–87 (4th Cir. 1976).

Most of these factors are present in the instant case. Corporate formalities were generally dispensed with; the corporation was undercapitalized, and was essentially operated with the personal funds of Dr. Thomas through "loans" which were repaid while the corporation was failing; proceeds from the "sale" of the corporation were utilized to pay off personal and corporate indebtedness; proceeds from the "sale" were utilized to redeem corporate stock owned by Dr. Thomas (plaintiff's undisputed facts 20–24; Thomas deposition at 10–17, 20–23, 26–27, 33, 36–43, 45–47, 61, 90–91, 95–101, 105, 109–119, 122–123, 126–127). Consequently, the assets of the corporation were dissipated, to the benefit of Dr. Thomas, prior to the satisfaction of the medicare debt which was established long before the corporation was involuntarily dissolved. These facts are sufficient to warrant summary judgment on the issue of personal liability. *See United States v. Hilton Nursing Home, supra*, at 2–3; *cf. United States v. Pisani, supra*, 646 F.2d at 88–89 ("Medicare statute can be circumvented if [defendant] is not personally liable"); *United States v. Normandy House Nursing Home, supra*, 428 F.Supp. at 424 ("corporate entity may be disregarded where failure to do so would lead to circumvention of a statute or avoidance of a clear legislative purpose").

## IV.

## ORDER

For the foregoing reasons, the Court, viewing the evidence and inferences drawn therefrom in a light most favorable to the defendants herein, finds no material factual dispute as to any of the issues raised in this lawsuit. It is, accordingly,

ORDERED that plaintiff's motion for summary judgment filed in the above entitled cause be, and is in all things, GRANTED. It is

FURTHER ORDERED that judgment in the total amount of $50,904.00, together with interest from the date of first demand, August 13, 1975 (see "Certificate of Indebtedness", Exhibit A), and costs of Court be, and is hereby, entered in favor of plaintiff, United States, against the defendants, Smithville Hospital, Inc. and Dr. James W. Thomas, jointly and severally.